# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche Manning | Sitting Judge if Other than Assigned Judge | Nan R. Nolan |
|---|---|---|---|
| **CASE NUMBER** | 02 C 978 | **DATE** | 5/22/2002 |
| **CASE TITLE** | Carl Birnberg and Jacob Moskovic vs. Milk St. Residential Ass'n, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Plaintiffs' motion to compel [14] is granted in part and denied in part.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | MAY 2 4 2002 | |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | docketing deputy initials | 28 |
| | Mail AO 450 form. | | |
| ✓ | Copy to judge/magistrate judge. | 5/22/2002 date mailed notice | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |



| | |
|---|---|
| CARL BIRNBERG and JACOB MOSKOVIC, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 02 C 978 |
| ) | |
| MILK STREET RESIDENTIAL ASSOCIATES ) | Judge Blanche M. Manning |
| LIMITED PARTNERSHIP, LEND LEASE ) | |
| REAL ESTATE INVESTMENTS, INC., ) | Magistrate Judge Nan R. Nolan |
| BOSTON FINANCIAL TECHNOLOGY ) | |
| GROUP, INC., LAKE MICHIGAN ) | |
| ASSOCIATES LLC, LMA GP LLC, CLARK ) | |
| ENTERPRISES, INC., and CLARK ONTERIE, ) | |
| L.L.C., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Carl Birnberg and Jacob Moskovic are former limited partners of a partnership that owns a substantial interest in a large residential and commercial building in Chicago, Illinois. The dispute in this case centers around a 1999 deal that resulted in both the buy-out of the limited partners' interests in the partnership and the replacement of the old general partner with a new general partner. The plaintiffs sued the old and new general partners as well as several related entities, alleging breach of fiduciary duty, breach of contract, breach of an implied covenant of good faith and fair dealing, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, intentional interference with contractual relations, fraud, and negligent misrepresentation. Three of the defendants have moved the District Court to dismiss the plaintiffs' allegations against them for lack of personal jurisdiction (hereinafter the "moving defendants"). The moving defendants

subsequently stipulated that they would engage in jurisdictional discovery. The plaintiffs served the moving defendants with discovery requests and the moving defendants objected to certain interrogatories and document requests. Currently before the Court is the plaintiffs' Motion to Compel Compliance with Plaintiffs' Jurisdictional Discovery Requests and for Extension of the Jurisdictional Discovery Period (Docket Entry #14). The District Court referred the plaintiffs' motion to this Court. The Court has both reviewed the papers filed by the parties and heard oral argument concerning the plaintiffs' motion to compel. For the following reasons, the plaintiffs' motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

In 1983, defendant Boston Financial Technology Group, Inc. ("Boston Financial") set up the Franklin Building Associates Limited Partnership ("Franklin Partnership"). At that time, the Franklin Partnership consisted of approximately 170 limited partners (including the two plaintiffs) and the general partner Milk Street Residential Associates ("Milk Street"). The Franklin Partnership's sole asset is a 90% interest in an entity that owns the Onterie Center—a large residential and commercial building located between Ontario and Erie streets in Chicago, Illinois.

The Franklin Partnership was not as financially successful as originally projected. In 1999, the limited partners were presented with a plan to bring in a corporate investor that would both buy out the limited partners and replace Milk Street as the general partner. The requisite number of limited partners accepted the plan. The plaintiffs allege that the defendants fraudulently obtained the limited partners' consent by failing to disclose (1) an appraisal of the Onterie Center that provided a substantially higher estimate of the property's value than the estimate provided by the

defendants, and (2) a third-party's offer to purchase the Onterie Center on more favorable terms to the limited partners than the 1999 deal.

The plaintiffs sued the following entities: (1) Boston Financial—the company that set up the Franklin Partnership and served as the Investor Service Agent to the partnership until 1992; (2) Milk Street—the original general partner of the Franklin Partnership; (3) LMA GP LLC ("LMA")—the company that replaced Milk Street as the general partner of the Franklin Partnership; (4) Lake Michigan Associates LLC ("Lake Michigan")—the parent of LMA; (5) Clark Onterie, L.L.C. ("Streeterville")—a company that owns part of Lake Michigan; (6) Clark Enterprises, Inc. ("Clark")—a company that owns a company that owns part of Lake Michigan; and (7) Lend Lease Real Estate Investments, Inc.—the current owner of the Onterie Center. Of these defendants, Boston Financial, Streeterville, and Clark (the moving defendants) moved the District Court to dismiss the plaintiffs' allegations against them for lack of personal jurisdiction.

## DISCUSSION

An analysis of the plaintiffs' motion to compel necessarily requires a brief overview of the principles governing personal jurisdiction.

### I. Personal Jurisdiction and the United States Constitution[1]

A federal court in Illinois can assert personal jurisdiction over a defendant if the defendant has purposefully established "minimum contacts" with Illinois. *See Int'l Shoe Co. v. Washington*, 325 U.S. 310, 316 (1945). Crucial to the minimum contacts analysis is a showing that the defendant,

---

[1] A federal court's assertion of personal jurisdiction over an out-of-state defendant must also comply with state law. *Central States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 939 (7th Cir. 2000). But because the parties arguments concern only the discovery necessary to establish the federal component of personal jurisdictional analysis, it is not necessary to review the state aspect of the analysis.

by virtue of its contacts with the forum, "should reasonably anticipate being haled into court [in the forum state.]" *Burger King v. Rudzewicz*, 471 U.S. 462, 474 (1985). Along with the minimum contacts analysis, the court must examine whether the assertion of jurisdiction over the defendant would comport with "fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 320.

## A. Minimum Contacts

The standard for determining whether such minimum contacts exist depends on whether the plaintiff asserts specific or general jurisdiction. In this case, the plaintiffs have not specified whether they intend to argue specific or general jurisdiction. In their motion, the plaintiffs contend that they are entitled to discovery into both theories.

## 1. Specific Jurisdiction

Specific jurisdiction refers to jurisdiction over a defendant in a suit "arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). Courts consider, among other things, the parties' negotiations, the future consequences contemplated by the parties, and the parties' actual course of dealings. For example, a defendant who places its products in the stream of commerce with the knowledge that the product will be sold in a certain state is subject to personal jurisdiction in a products-liability suit in that state. *Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1126 (7th Cir. 1983) (concluding that the defendant manufacturer may reasonably anticipate being haled into court in that state).

In *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984), the plaintiff sued Hustler over several incidents of libel that appeared in issues of the defendant's magazine. The Supreme Court held that because the defendant voluntarily decided to enter the forum state's market—selling 10,000 to 15,000 magazines per month—"it must reasonably anticipate being haled into court there in a libel

action based on the contents of its magazine." *Id.* at 781. Conversely, the minimum contacts test cannot be satisfied by the unilateral act of another party. *Stauffacher v. Bennett*, 969 F.2d 455, 458 (7th Cir. 1992). For example, in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980), one of the defendants (a car dealer who sold cars only in New York) sold a car to the plaintiff in New York. The plaintiff, on his way to Arizona, was involved in a car accident in Oklahoma. The plaintiff brought suit in Oklahoma. The Supreme Court held that the Oklahoma court lacked personal jurisdiction over the New York car dealer because that defendant could not reasonably anticipate being haled into that forum's court, i.e., the plaintiff's unilateral act of driving to Oklahoma did not subject the defendant to the jurisdiction of that state's courts. *See id.* at 297.

## 2. General Jurisdiction

General jurisdiction refers to jurisdiction over a defendant in a suit neither arising out of nor related to the defendant's contacts with the forum state. General jurisdiction is permitted only where the defendant has "continuous and systematic general business contacts" with the forum state. *Helicopteros*, 466 U.S. at 416. When determining whether general personal jurisdiction exists, courts look to the following non-exhaustive list of factors: (1) the volume of the defendant's business in the forum state; (2) whether the defendant maintains an office or employees within the forum state; (3) whether the defendant sends agents into the forum state to conduct business; (4) whether the defendant advertises or solicits business in the forum state; and (5) whether the defendant has designated an agent for service of process in the forum state. *Id.*

In *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952), during World War II, the president and general manager of the defendant mining company moved his office from the Philippines to Ohio because the Japanese army had occupied the Philippines. From the Ohio office,

the president maintained records, held directors' meetings and supervised the limited wartime activities of the corporation. The Supreme Court held that the defendant mining company had sufficient minimum contacts in the forum state to establish general personal jurisdiction. *Id.* at 445-46. In contrast, in *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984), the Supreme Court held that the defendant corporation's general business contacts with Texas did not meet the minimum contacts standard. In that case, the defendant—a Colombian company that transported oil company employees via helicopter to and from various locations in South America—purchased the majority of its fleet from Texas, sent personnel to Texas for training and, on one occasion, sent a corporate officer to Texas for contract negotiations. Noting that the defendant had never performed operations or solicited business in Texas and never sold any products that reached that state, the *Helicopteros* court reasoned that "mere purchases" and the brief presence of employees in the forum state did not amount to "continuous and systematic general business contacts." *Id.* at 416-18.

## B. "Fair Play and Substantial Justice"

To determine whether the assertion of jurisdiction over the defendant would comport with "fair play and substantial justice," the court examines the burden on the defendant in defending the lawsuit in the forum state, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interests of the states in furthering

fundamental substantive social policies. *Burger King*, 471 U.S. at 476-77; *World-Wide Volkswagen*, 444 U.S. at 292. The Supreme Court has stated that:

> [The "fair play and substantial justice" factors] sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. . . . On the other hand, where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.

*Burger King*, 471 U.S. at 477 (internal citations omitted). With these principles in mind, the Court will examine the issues raised in the plaintiffs' motion to compel.

## II. Plaintiffs' Motion to Compel

In their motion to compel, the plaintiffs raise two preliminary matters which affect all of the defendants' discovery responses as well as numerous complaints regarding individual responses. The moving defendants raise one general objection to the plaintiffs' discovery requests. Before addressing the parties' disputes regarding specific discovery requests, the Court will consider the parties' global concerns.

## A. General Arguments

## 1. Appropriate Time Period for Discovery

The parties disagree on the appropriate temporal scope of jurisdictional discovery. The plaintiffs' discovery requests seek information from 1983—the year the Franklin Partnership was formed—to the present. The moving defendants limited their responses to the period 1997 to the present. In their motion to compel, the plaintiffs argue that information dating from 1983 to the present is relevant to the District Court's general jurisdiction inquiry, i.e., it is relevant to whether the moving defendants have "continuous and systematic" business contacts with Illinois. The Court

-7-

concludes that the plaintiffs have not established that they are entitled to discover information from 1983 to the present.

The plaintiffs argue that *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996), supports their argument that they are entitled to discovery dating back to 1983. In *Metropolitan Life*, the Second Circuit observed that "[f]ew cases discuss explicitly the appropriate time period for assessing whether a defendant's contacts with the forum state are sufficiently 'continuous and systematic' for the purposes of general jurisdiction." *Id.* at 569. Noting that courts generally assess a defendant's contacts to the forum over a period of years ranging from three to five years prior to the filing of the complaint, the *Metropolitan Life* court held that the district court reasonably limited discovery to a six-year period prior to the filing of the complaint. *Id.* The plaintiffs have not explained how *Metropolitan Life* supports their argument that a nineteen-year period of jurisdictional discovery is reasonable. An absence of general business contacts during a five-year period leading up to the complaint indicates that the defendant's contacts to the forum state are not "continuous and systematic;" the fact that the defendant may have had more significant contacts ten to fifteen years ago does not mean that the defendant is subject to the personal jurisdiction of the forum's courts. *World-Wide Volkswagen*, 444 U.S. at 297 (stating that a defendant can alleviate the risk of litigation by severing its connection to the forum); *United States v. Subklew*, No. 003518, 2001 WL 896473, at *4 (S.D. Fla. June 5, 2001) (finding that the defendant had no contacts with the forum in the five years prior to the filing of the complaint, the court held that it would be unreasonable to consider contacts that predated that five-year period); *see also Trost v. Bauer*, No. 01 C 2038, 2001 WL 845477, at *9 (N.D. Ill. July 24, 2001) (holding that even assuming the defendant had solicited Illinois clients, "the fact that the solicitations ended two years prior to

suit negates any continuous and systematic contact [the defendant] may have had with Illinois");

*LaSalle Nat'l Bank v. Vitro, Sociedad Anomima*, 85 F. Supp. 2d 857, 863-64 (N.D. Ill. 2000) (reasoning that manufacturing plant located in Illinois was not enough to establish general jurisdiction because "the plant ceased operations more [than] three years before the filing of the complaint"). Given the specific facts of this case, the Court concludes that a five-year period is a sufficient period of time for the plaintiffs to discover any "continuous and systematic" business contacts between the moving defendants and Illinois. Accordingly, for purposes of jurisdictional discovery in this case, the relevant time period is from January 1, 1997 to the filing of the complaint. To the extent this opinion requires the moving defendants to produce any additional information, the moving defendants may limit their responses to the relevant time period.

## 2. Defendants' Incorporation of General Objections into Each Response

The plaintiffs argue that the moving defendants cannot incorporate all of their general objections into each of their discovery responses. At oral argument, counsel for the moving defendants informed the Court that his clients have not withheld any information or documents on the basis of a general objection. Based on counsel's representation, the Court concludes that it need not decide whether the moving defendants' incorporation of general objections into its discovery responses was improper.

## 3. Prima Facie Case Establishing that Jurisdictional Discovery is Warranted

As a general rule, a plaintiff must establish a prima facie case showing that personal jurisdiction is likely to exist before the plaintiff is entitled to any jurisdictional discovery. *Central States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000). In this case, however, the moving defendants stipulated that the plaintiffs are

entitled to conduct jurisdictional discovery. (Pls.' Mot. to Compel, Ex. A.) Therefore, the plaintiffs

do not need to establish a prima facie case regarding personal jurisdiction.

## B. Disputes Regarding Specific Discovery Requests

### 1. Interrogatories

### (a) Interrogatory No. 1

This interrogatory asks the moving defendant to identify all individuals who contributed

information to answer the plaintiffs' interrogatories. The moving defendants' answer names several

persons but also objects based on the attorney-client privilege. The plaintiffs argue that the moving

defendants' assertion of the privileges is improper because the interrogatory does not seek the

substance of any communication. At oral argument, counsel for the moving defendants informed

the Court that his clients have not withheld any information from any of their discovery responses

on the basis of the attorney-client privilege except for communications between the moving

defendants and their litigation counsel. Based on counsel's representation, the Court concludes that

the moving defendants have fully complied with their duty to respond to Interrogatory No. 1.

### (b) Interrogatory No. 2(a)

The plaintiffs argue that the moving defendants' response to Interrogatory No. 2(a) does not

disclose moving defendant Clark's general business contacts with Illinois—the key inquiry in a

general jurisdictional analysis. Interrogatory No. 2(a) states:

> For the relevant time period, identify any present or former officer, director,
> employee, representative, agent or other affiliate of each of the Moving Defendants
> who have, when acting on behalf of a Moving Defendant: (a) traveled to the State of
> Illinois, stating the dates and purposes of each visit; identifying any person(s) with
> whom the present or former officer, director, employee, representative, agent or other
> affiliate met; the date and place of the meeting; and describe the purpose and
> substance of the meeting.

-10-

(Pls.' Mot. to Compel, Ex. B.) The moving defendants limited their response to Interrogatory No. 2(a) as follows: "For Clark Enterprises, Foreign Defendants have limited their response to officers and directors and any employees involved with the Onterie Center investment." (*Id.*, Ex. D.) However, as explained above, a defendant is subject to the personal jurisdiction of the District Court if it has "continuous and systematic" business contacts with Illinois regardless of whether those contacts are related to the subject of the litigation. Clark concedes this point but argue that it would be unduly burdensome to require it to answer this interrogatory. Clark's burdensomeness arguments centers on the plaintiffs' request for travel information of Clark's "affiliates." At oral argument, counsel for the moving defendants informed the Court that Clark is a large company with hundreds of corporate affiliates.

A court can limit discovery if the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2). The Court agrees that it would be unduly burdensome to require Clark to assemble travel information from all of its affiliates. Given the large number of Clark affiliates, the plaintiffs' broad request that Clark collect travel information from each affiliate imposes a significant burden. The Court also concludes that the affiliates' travel information is not likely to benefit the plaintiffs. In general, personal jurisdiction cannot be based on corporate affiliation or stock ownership. *Central States*, 230 F.3d at 943; *Gruca v. Alpha Therapeutic Corp.*, 19 F. Supp. 2d 862, 865 (N.D. Ill. 1998).[2]

---

[2] Although the moving defendants stipulated that they would engage in jurisdictional discovery, the moving defendants did not stipulate to discovery on behalf of all of their corporate affiliates. As noted above, personal jurisdiction cannot be based on corporate affiliation or stock ownership. *Central States*, 230 F.3d at 943. To establish personal jurisdiction based on the actions of a corporate affiliate, a plaintiff must show: (1) that the parent and the subsidiary have not maintained formal separation nor observed corporate formalities; or (2) that the parent exercises an unusual degree of control over the subsidiary. *Gruca*, 19 F. Supp. 2d at 866. In the

Although it is unduly burdensome to require Clark to collect travel information regarding its affiliates, the same logic does not apply to the business travel of Clark, i.e., the business travel of Clark's present or former officers, directors, employees, representatives or agents. Information establishing that these individuals traveled to Illinois to conduct business on behalf of Clark is highly relevant to the District Court's general jurisdictional analysis. Also, requiring Clark to produce this information would not impose a significant burden because the information concerns only Clark personnel and not individuals associated with Clark's many affiliates. Accordingly, the Court concludes that the moving defendants must disclose any business travel to Illinois during the relevant time period by Clark's present or former officers, directors, employees, representatives or agents for the purpose of conducting business on behalf of Clark (not Clark's affiliates) in Illinois.[3]

**(c) Interrogatory No. 2, Subsections (b)-(d)**

Subsections (b) through (d) of Interrogatory No. 2 are similar to the plaintiffs' request for business travel information discussed in the preceding section. Instead of requesting travel information, these subsections seek documents sent to or received from Illinois (subsection (b)), telephone conversations with persons located in Illinois (subsection (c)), and e-mails or other electronic transmissions sent to or received from Illinois (subsection (d)). Incorporating the analysis from the preceding section, the Court concludes that the defendants must respond to these requests

---

absence of any indication that the plaintiffs could establish either of these requirements, the Court will not extend jurisdictional discovery to all of the moving defendants' corporate affiliates.

[3] At oral argument, the moving defendants argued that they should not have to produce travel information for business trips that merely involve a layover at an Illinois airport. The Court agrees. The moving defendants need only produce information regarding trips to Illinois for the purpose of conducting business in Illinois.

-12-

to the extent that the following criteria are met: (1) the communication (i.e., the document, phone calls, or e-mail) was between one of the moving defendants (as opposed to one of the moving defendants' affiliates) and a person or entity located in Illinois; and (2) the purpose of the communication was to conduct business on behalf of one of the moving defendants (as opposed to one of the moving defendants' affiliates) in Illinois.

**(d) Interrogatory No. 4**

Interrogatory No. 4 states: "Provide detailed descriptions of all business and other dealings each of the Moving Defendants had with individuals and/or entities in the State of Illinois during the relevant time period, including, but not limited to, the names of the parties involved, and the dates and subjects of the interactions." (Pls.' Mot. to Compel, Ex. B.) Objecting to the phrase "business and other dealings" as vague, the moving defendants interpreted this request as seeking "the identity of any contract that the Foreign Defendants directly entered during the relevant time period with parties that are the residents of Illinois, but excluding settlement agreements." (*Id.*, Ex. D.) In their motion to compel, the plaintiffs argue that the moving defendants response is deficient for three reasons. First, the plaintiffs argue that because the request seeks information regarding "business and other dealings," the moving defendants cannot limit their response to contracts. Although the Court agrees that the interrogatory seeks a broader range of information than just contracts, the Court is sympathetic to the moving defendants' argument that the term "business and other dealings" is imprecise. When asked to elaborate on the term at oral argument, counsel for the plaintiffs stated that the term includes business matters such as bids, proposals or negotiations, regardless of whether it resulted in a contract. The Court agrees that the plaintiffs are entitled to this information. Based on this understanding of the term "business and other dealings," the Court concludes that the moving

defendants must amend its answer to Interrogatory No. 4 to include such information. Second, the plaintiffs argue that the moving defendants cannot limit their response to their "direct" involvement in business matters related to Illinois. At oral argument, counsel for the moving defendants informed the Court that the moving defendants used the term "directly" to distinguish between the actions of a moving defendant (a direct action), and an action by one of the moving defendants' corporate affiliates (an indirect action). Based on the general rule that personal jurisdiction cannot be based on corporate affiliation, *Central States*, 230 F.3d at 943, the Court concludes that the moving defendants properly limited its answer to "direct" activities. Third, the plaintiffs argue that the moving defendants must produce any settlement agreements that are responsive to Interrogatory No. 4. The moving defendants indicated at oral argument that, based on Federal Rule of Evidence 408, they have withheld information regarding one settlement agreement (the Chandra Jha settlement agreement) that is responsive to the request. For the reasons stated in open court, the Court concludes that Rule 408 does not protect a settlement agreement from disclosure when the agreement is sought for purposes of jurisdictional discovery.

**(e) Interrogatory No. 5**

Interrogatory No. 5 states: "Provide a detailed description of all monies, securities, or tangible goods each of the Moving Defendants received from persons or entities located in the State of Illinois during the relevant time period." (Pls.' Mot. to Compel, Ex. B.) In response, the moving defendants stated that none of them directly received payments from persons or entities located in Illinois. (*Id.*, Ex. D.) At oral argument, counsel for the moving defendants explained that the word "directly" in its response indicates that the none of the moving defendants (as opposed to one of their corporate affiliates) received any money, securities or tangible goods from persons or entities located

-14-

in Illinois. Based on counsel's representation, the Court concludes that the moving defendants have fully responded to Interrogatory No. 5.

**(f) Interrogatory No. 6**

Interrogatory No. 6 states: "Identify all offices maintained by and real property owned or leased by each of the Moving Defendants located in the State of Illinois." (Pls.' Mot. to Compel, Ex. B.) The moving defendants' response states: "[N]one of the Foreign Defendants have directly maintained an office or owned or leased property in the State of Illinois." (*Id.*, Ex. D.) In their motion to compel, the plaintiffs again take issue with the word "directly." As noted previously, the word "directly" merely indicates a distinction between the activities of the moving defendants and the activities of their corporate affiliates. (*Supra* at 14.) Based on the general rule that personal jurisdiction cannot be based on corporate affiliation, *Central States*, 230 F.3d at 943, the Court concludes that the moving defendants have adequately responded to Interrogatory No. 6.

**(g) Interrogatory No. 7**

Interrogatory No. 7 states: "Describe all actions taken by each of the Moving Defendants concerning the Onterie Center, including but not limited to visits thereto and examination of operating and/or financial records pertaining thereto." (Pls.' Mot. to Compel, Ex. B.) The moving defendants responded to this interrogatory by incorporating their responses to Interrogatory Nos. 2(a) and 5. In their motion to compel, the plaintiffs argue that this response is insufficient for the same reasons that the moving defendants' responses to Interrogatory Nos. 2(a) and 5 are insufficient. The Court has already resolved these arguments; specifically, the Court (1) ordered the moving defendants to disclose all travel to Illinois regarding the Onterie Center (Interrogatory No. 2(a)), and (2) concluded that the moving defendants adequately responded to Interrogatory No. 5.

### 3) Document Requests

### (a) Document Request No. 3

Document Request No. 3 states: "All documents, including, but not limited to, agreements and evidence of ownership or affiliation, concerning the corporate or business relationship between each of the Moving Defendants and: (a) each of the other defendants; (b) the Onterie Associates Limited Partnership; (c) the Franklin Partnership; and (d) Chandra K. Jha." (Pls.' Mot. to Compel, Ex. C.) The moving defendants' response states:

> Foreign Defendants further object that this request is vague and ambiguous as to the meaning of "affiliation" and "concerning the . . . business relationship" and fails to specify the documents sought with reasonable particularity. . . Subject to the foregoing objections, the Foreign Defendants will produce non-privileged documents evidencing the ownership structure during the relevant time period between the Foreign Defendants and (a) the other defendants in this litigation; (b) Onterie Associates Limited Partnership; and (c) the Franklin Building Associates Limited Partnership.

(*Id.*, Ex. E.) In their motion to compel, the plaintiffs argue that the moving defendants' response is insufficient for two reasons. First, the plaintiffs contend that because the request seeks "documents . . . concerning the corporate or business relationship," the moving defendants should not have limited their document production to documents evidencing "the ownership structure" between the moving defendants and the other specified parties. The Court concludes that the term "documents . . . concerning the corporate or business relationship" is vague. Despite the moving defendants' objection to this term, the plaintiffs have failed to explain, either in their motion to compel or at oral argument, the type of documents they seek with this request. In the absence of such an explanation, the Court concludes that the moving defendants' interpretation of this term—i.e., documents evidencing the ownership structure of the parties—is reasonable. Accordingly, the Court concludes

that the plaintiffs have not established that the moving defendants improperly limited the scope of Document Request No. 3.

The plaintiffs next argue that the moving defendants improperly withheld documents relating to Chandra K. Jha. At oral argument, counsel for the moving defendants informed the Court that the principal document relating to Mr. Jha is the settlement agreement discussed in the section of this opinion regarding Interrogatory No. 4. (*Supra* at 14.) For the reasons stated in that section, the Court concludes that the moving defendants must produce the settlement agreement as well as any other responsive documents related to Mr. Jha.

**(b) Document Request No. 4**

Document Request No. 4 states:

All documents that constitute organizational charts or identify the chain of command and/or job responsibilities of all professional and management personnel for each of the Moving Defendants, the Onterie Associates Limited Partnership, and the Franklin Partnership during the relevant time period, as well as documents sufficient to show the primary business and home addresses for all personnel appearing or otherwise named in those records.

(Pls.' Mot. to Compel, Ex. C.) At oral argument, counsel for the moving defendants stated that although he was not aware of any documents responsive to this request, he would check again to see if there are any documents from the relevant time period evidencing the chain-of-command of the moving defendants. Based on counsel's representation (and subject to a second search for responsive documents), the Court concludes that the moving defendants have complied with Document Request No. 4.

that the plaintiffs have not established that the moving defendants improperly limited the scope of

Document Request No. 3.

The plaintiffs next argue that the moving defendants improperly withheld documents relating

to Chandra K. Jha. At oral argument, counsel for the moving defendants informed the Court that the

principal document relating to Mr. Jha is the settlement agreement discussed in the section of this

opinion regarding Interrogatory No. 4. (*Supra* at 14.) For the reasons stated in that section, the

Court concludes that the moving defendants must produce the settlement agreement as well as any

other responsive documents related to Mr. Jha.

**(b) Document Request No. 4**

Document Request No. 4 states:

All documents that constitute organizational charts or identify the chain of command
and/or job responsibilities of all professional and management personnel for each of
the Moving Defendants, the Onterie Associates Limited Partnership, and the Franklin
Partnership during the relevant time period, as well as documents sufficient to show
the primary business and home addresses for all personnel appearing or otherwise
named in those records.

(Pls.' Mot. to Compel, Ex. C.) At oral argument, counsel for the moving defendants stated that

although he was not aware of any documents responsive to this request, he would check again to see

if there are any documents from the relevant time period evidencing the chain-of-command of the

moving defendants. Based on counsel's representation (and subject to a second search for

responsive documents), the Court concludes that the moving defendants have complied with

Document Request No. 4.

**(c) Document Request No. 5**

Document Request No. 5 states: "All documents, including, but not limited to, certificates of partnership and/or incorporation and dissolution and bylaws, that refer, relate, or otherwise pertain to the formation and dissolution of each of the Moving Defendants." (Pls.' Mot. to Compel, Ex. C.) At oral argument, counsel for the moving defendants stated that the moving defendants have produced all responsive documents from 1997 to the filing of the complaint. The plaintiffs argue that they are also entitled to pre-1997 documents. Based on the Court's determination that the relevant time period for jurisdictional discovery is from 1997 to the filing of the complaint, the Court concludes that the moving defendants have fully complied with Document Request No. 5.

**(d) Document Request No. 6**

Document Request No. 6 states: "Documents sufficient to show the structure, function, and purpose of each of the Moving Defendants, including, but not limited to, corporate or partnership charters and/or other founding documents." (Pls.' Mot. to Compel, Ex. C.) At oral argument, counsel for the plaintiffs indicated that the request seeks documents such as statements of purpose, press releases, corporate projections and proposals for Illinois projects. It is not clear whether the moving defendants possess such documents. To the extent that the moving defendants have such documents in their possession, they must produce those documents.

**(e) Document Request No. 7**

Document Request No. 7 states: "Documents sufficient to show all states in which each of the Moving Defendants were authorized or registered to do business during the relevant time period." (Pls.' Mot. to Compel, Ex. C.) The parties agree that the only state at issue is Illinois. In their response, the moving defendants stated that they were not registered to do business in Illinois

at any point during the relevant time period. (*Id.*, Ex. E.) Based on that response, the Court concludes that the moving defendants have adequately responded to Document Request No. 7.

### (f) Document Request No. 8

Document Request No. 8 states: "Documents sufficient to show all offices owned, leased, or otherwise maintained by each of the Moving Defendants—including their affiliates—in the State of Illinois during the relevant time period." (Pls.' Mot. to Compel, Ex. C.) The moving defendants objected both to the inclusion of their "affiliates" within the scope of this document request and to the term "or otherwise maintained," arguing that the latter term is vague. Subject to these objections, the moving defendants responded that none of the moving defendants owned or leased any offices in Illinois during the relevant time period. In their motion to compel, the plaintiffs simply state that "it is inconceivable that the Moving Defendants do not have any documents or information responsive to this Request." (*Id.* at 12-13.) Based on the moving defendants' representation that they do not have any responsive documents, the Court concludes that the moving defendants have adequately responded to Document Request No. 8.

### (g) Document Request Nos. 9 and 10

Document Request No. 9 states: "All documents concerning written or oral communications of any kind—including electronic communications—between or among each of the Moving Defendants and any person who resides or is employed in the States of Illinois." (Pls.' Mot. to Compel, Ex. C.) Document Request No. 10 states: "All documents concerning meetings between or among each of the Moving Defendants and any person who resides or is employed in the State of Illinois." (*Id.*) The Court concludes that the plaintiffs are not entitled to discover "communications of any kind." Only communications regarding the 1999 Onterie Center deal or the

moving defendants' general business contacts with Illinois are relevant. Earlier in this opinion, the Court concluded that the moving defendants must disclose information regarding certain e-mails or other electronic transmissions. (*Supra* at 10-13.) For the reasons stated in that section, the Court concludes that the moving defendants must produce documents concerning written or oral communications, including e-mails, if: (1) the communication concerned The Onterie Center; or (2) the communication (i) occurred between one of the moving defendants (as opposed to one of the moving defendants' affiliates) and a person or entity located in Illinois, and (ii) the purpose of the communication was to conduct business on behalf of one of the moving defendants (as opposed to one of the moving defendants' affiliates) in Illinois. To the extent the moving defendants possess such documents, the moving defendants must produce those documents.

**(h) Document Request No. 11**

Document Request No. 11 states: "All Board, committee, and/or other meeting minutes from meetings held by each of the Moving Defendants, during the relevant time period, relating to business dealings in the State of Illinois." (Pls.' Mot. to Compel, Ex. C.) In response, the moving defendants objected that the terms "committee, and/or other meeting minutes" and "relating to business dealings" are vague and ambiguous. The Court concludes that the term "committee, and/or other meeting minutes" is not vague. It means any document containing the minutes of any meeting. Regarding the term "relating to business dealings," the Court notes that a similar term was defined earlier in this opinion. The Court defined the term "business and other dealings" as business matters such as bids, proposals or negotiations, regardless of whether it resulted in a contract. (*Supra* at 13-14.) The Court concludes that the moving defendants should apply the same definition to the term "relating to business dealings." To the extent that one of the moving defendants (as opposed to one

-20-

of their affiliates) possesses a document that meets the following criteria, it must produce that document: (1) the document contains the minutes from a meeting held by one of the moving defendants during the relevant time period; and (2) the meeting concerned a business matter related to Illinois (i.e., a matter that is located in Illinois or that involved a person or entity located in Illinois).

**(i) Document Request No. 12**

Document Request No. 12 states: "All documents concerning any distribution of cash from, or the ownership, sale and/or management of, the Onterie Center." (Pls.' Mot. to Compel, Ex. C.) The Court agrees that such documents are relevant to personal jurisdiction. At oral argument, however, counsel for the moving defendants asserted that none of the moving defendants received any cash distribution related to the Onterie Center. Based on counsel's representation, the Court concludes that the moving defendants adequately responded to Document Request No. 12.

**(j) Document Request No. 13**

Document Request No. 13 states: "All documents concerning Boston Financial's role as the Investor Service Agent for the Franklin Partnership at any time during the relevant time period." (Pls.' Mot. to Compel, Ex. C.) At oral argument, counsel for the moving defendants stated that Boston Financial has not been the Investor Service Agent for the Franklin Partnership since 1992. Based on counsel's representation, the Court concludes that the moving defendants have adequately responded to Document Request No. 13.

**(k) Document Request No. 14**

Document Request No. 14 states: "All documents concerning any business relationship between each of the Moving Defendants and any other entity in the State of Illinois during the

relevant time period." (Pls.' Mot. to Compel, Ex. C.) Earlier in this opinion, the Court ordered the moving defendants to amend their answer to Interrogatory No. 4 to describe all of the moving defendants' business matters that also involved individuals or entities located in Illinois. (*Supra* at 13-14.) To the extent the moving defendants possess documents concerning any of the business matters referenced in their amended answer to Interrogatory No. 4, the moving defendants must produce those documents.

**(l) Document Request Nos. 15, 16, 17 and 18**

In their motion to compel, the plaintiffs argue that the moving defendants improperly limited their responses to these four document requests by producing only documents concerning the moving defendants' "direct" activities. As explained previously, the word "directly" simply distinguishes between the activities of the moving defendants and the activities of their corporate affiliates. (*Supra* at 14.) Based on the general rule that personal jurisdiction cannot be based on corporate affiliation, *Central States*, 230 F.3d at 943, the Court concludes that the moving defendants properly limited their response to "direct" activities.

**(m) Document Request No. 19**

Document Request No. 19 states: "All telephone records, facsimile receipts, credit card receipts, wire transfer receipts, airplane tickets, hotel and restaurant receipts, automobile rental bills, expense reports, overnight courier billing statements, and all other receipts, invoices, and/or statements evidencing the moving defendants' contacts with the State of Illinois during the relevant time period." (Pls.' Mot. to Compel, Ex. C.) The Court concludes that it would be unduly burdensome to require the moving defendants to produce the documents requested in Document Request No. 19. Earlier in this opinion, the Court ordered the moving defendants to disclose its

business travel to Illinois, and its business communications and business dealings with persons or entities located in Illinois. (*Supra* at 10-14, 19-21, 22.) Because the documents described in Document Request No. 19 will not reveal any additional contacts between the moving defendants and Illinois, the Court concludes that it would be unduly burdensome to require the moving defendants to produce these documents.

## C. Plaintiffs' Request for Extension of Jurisdictional Discovery

In their stipulation, the parties agreed that jurisdictional discovery would be completed on April 12, 2002. (Pls.' Mot. to Compel, Ex. A.) However, the stipulation also states that "[s]hould the above-referenced discovery not be timely completed. . . the parties may move this Court for additional time in which to complete this discovery and to correspondingly extend the briefing schedule." (*Id.*) The Court concludes that an extension of the jurisdictional discovery period is warranted. The moving defendants must submit amended interrogatory answers and document production to the plaintiffs by June 11, 2002—twenty-one (21) days from the date of this order. Jurisdictional Discovery will close on July 5, 2002—forty-five (45) days from the date of this order. The plaintiffs may serve notices of deposition at any time during the jurisdictional discovery period.

In their stipulation, the parties agreed to the following briefing schedule regarding the moving defendants' Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction: (1) Plaintiffs' Opposition Memorandum is due fourteen (14) days after the close of jurisdictional discovery; and (2) Defendants' Reply Memorandum is due twelve (12) days after plaintiffs file their opposition memorandum. (*Id.*) The Court adopts the parties' schedule. The plaintiffs' opposition memorandum is due on July 19, 2002, and the moving defendants' reply memorandum is due on July 31, 2002.

## CONCLUSION

For the foregoing reasons, the plaintiffs' motion to compel is GRANTED IN PART and DENIED IN PART.

ENTER:

_Nan R. Nolan_

**Nan R. Nolan**

**United States Magistrate Judge**

Dated: _May 22, 2002_