# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche Manning | Sitting Judge if Other than Assigned Judge | Nan R. Nolan |
|---|---|---|---|
| **CASE NUMBER** | 02 C 978 | **DATE** | 5/28/2003 |
| **CASE TITLE** | Birnberg vs. Milk St Residential | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Status hearing set for June 12, 2003 at 9:00 a.m. For the reasons stated in the attached report and recommendation, class certification is not appropriate in this case. The Court recommends that Plaintiff's motion for class certification be denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAY 29 2003 | |
| | Notified counsel by telephone. | | date docketed | 09 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | 5/28/2003 | |
| | | | date mailed notice | |
| cav | courtroom deputy's initials | | cav | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARL BIRNBERG and JACOB MOSKOVIC, on behalf of themselves and all others similarly situated,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>MILK STREET RESIDENTIAL ASSOCIATES LIMITED PARTNERSHIP, LEND LEASE REAL ESTATE INVESTMENTS, INC., BOSTON FINANCIAL TECHNOLOGY GROUP, INC., LAKE MICHIGAN ASSOCIATES LLC, LMA GP LLC, CLARK ENTERPRISES, INC., and CLARK ONTERIE, L.L.C.,<br><br>　　　　　　Defendants.<br><br>CARL BIRNBERG and JACOB MOSKOVIC, on behalf of themselves and all others similarly situated,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>BOSTON FINANCIAL GROUP, LIMITED PARTNERSHIP, and BOSTON FINANCIAL GROUP, INC.,<br><br>　　　　　　Defendants. | Nos. 02 C 0978 and 02 C 3436<br>(Consolidated Proceedings)<br><br>Judge Blanche M. Manning<br><br>Magistrate Judge Nan R. Nolan<br><br>**DOCKETED**<br>MAY 2 9 2003 |

## REPORT AND RECOMMENDATION

NAN R. NOLAN, Magistrate Judge:

　　Plaintiffs Carl Birnberg and Jacob Moskovic are former limited partners of a partnership that owns a substantial interest in a large residential and commercial building in Chicago,

Illinois. The dispute in this case centers around a 1999 deal that resulted in both the buy-out of the limited partners' interests in the partnership and the replacement of the old general partner with a new general partner. Plaintiffs sued the old and new general partners as well as several related entities, alleging breach of fiduciary duty (Count 1), violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") (Count 2), breach of contract (Count 3), breach of an implied covenant of good faith and fair dealing (Count 4), intentional interference with contractual relations (Count 5), fraud (Count 6), and negligent misrepresentation (Count 7).

In this motion, plaintiffs move to certify a class consisting of all limited partners as of February 23, 1999, or their successors in interest. Cmplt. ¶17; Pls. Mem., p. 1. Defendants assert that plaintiffs have failed to meet the standards of Fed. R. Civ. P. 23(a) or (b). For the reasons set forth below, the Court recommends that plaintiffs' motion be denied.

## BACKGROUND

In 1983, defendant Boston Financial Technology Group, Inc. ("Boston Financial") set up the Franklin Building Associates Limited Partnership ("Franklin Partnership"). At that time, the Franklin Partnership consisted of approximately 170 limited partners (including the two plaintiffs) and the general partner Milk Street Residential Associates Limited Partnership ("Milk Street"). The Franklin Partnership's sole asset is a 90% interest in an entity that owns the Onterie Center – a large residential and commercial building located between Ontario and Erie streets in Chicago, Illinois. Cmplt. ¶¶2, 20, 21.[1]

---

[1] The referenced citations are drawn from plaintiffs' complaint against Milk Street et al., No. 02 C 978, which is substantively identical to the allegations in their consolidated complaint against Boston Financial et al., No. 02 C 3436.

The Franklin Partnership was not as financially successful as originally projected and in June 1998, the United States Department of Housing and Urban Development ("HUD"), which partially financed the Onterie Center with a mortgage, threatened to foreclose on the property. Cmplt. ¶¶27, 28. In 1999, Boston Financial presented the limited partners with a plan to bring in a corporate investor – LMA GP LLC ("LMA") – that would both buy out the limited partners and replace Milk Street as the general partner. *Id.* ¶¶35-37. The requisite number of limited partners accepted the plan, but plaintiffs allege that defendants fraudulently obtained that consent by (1) using misleading consent, proxy and power of attorney solicitations that misrepresented the true value of the Onterie Center; (2) failing to disclose an appraisal of the Onterie Center that provided a substantially higher estimate of the property's value than the estimate provided by defendants; (3) failing to disclose conflicts of interest with the LMA transaction; and (4) failing to disclose an offer by Apartment Investment Management Company ("AIMCO") to purchase the Onterie Center on more favorable terms to the limited partners than the LMA deal. Plaintiffs claim that this misconduct resulted in "huge tax liabilities" to the limited partners. *Id.* ¶3.

Plaintiffs sued the following entities: (1) Boston Financial and its successors in interest, Boston Financial Group, Limited Partnership and Boston Financial Group, Inc.; (2) Milk Street; (3) LMA; (4) Lake Michigan Associates LLC ("Lake Michigan") – the parent of LMA; (5) Clark Onterie, L.L.C. – a company that owns part of Lake Michigan; (6) Clark Enterprises, Inc. – a company that owns a company that owns part of Lake Michigan; and (7) Lend Lease Real Estate Investments, Inc. – the current owner of the Onterie Center. Plaintiffs now seek to certify a class of all Franklin Partnership limited partners as of February 23, 1999 with respect to all seven counts of the complaint.

3

## DISCUSSION

### A. Standards for Rule 23 Class Certification

A court has broad discretion to resolve whether certifying a class is proper. *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998). In making this determination, the substantive allegations in the complaint are taken as true and, generally, the ultimate merits of the case are not examined. *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 895 (7th Cir. 1981); *Hill v. Shell Oil Co.*, No. 98 C 5766, 2002 WL 663583, at *2 (N.D. Ill. Mar. 28, 2002). However, the "boundary between a class determination and the merits may not always be easily discernible." *Retired Chicago Police Association v. City of Chicago*, 7 F.3d 584, 599 (7th Cir. 1993); *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978) (class determination generally depends on factors "enmeshed in the factual and legal issues comprising the plaintiff's cause of action"). Thus, a court "should make whatever factual and legal inquiries are necessary under Rule 23" before deciding whether a case should proceed as a class action. *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675 (7th Cir. 2001); *Woodard v. Tower Automotive Products Co.*, No. 00 C 50459, 2002 WL 832572, at *2 (N.D. Ill. May 1, 2002).

To achieve certification under Rule 23, plaintiffs must first meet the four requirements of Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequate representation). *See Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992). If plaintiffs satisfy all of these requirements, they then must meet one of the requirements set

4

forth in Rule 23(b). *Retired Chicago Police Association*, 7 F.3d at 596. In this case, plaintiffs seek certification pursuant to Rule 23(b)(3), which requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

**B. Analysis**

**1. Requirements of Rule 23(a)**

**a. Numerosity**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." *See Williams v. Brown*, __ F.R.D. __, 2003 WL 1898932, at *1 (N.D. Ill. Apr. 16, 2003). Defendants do not dispute that the proposed class consists of 174 limited partners scattered throughout the United States, including 27 in Illinois. This is sufficient to satisfy the requirement of numerosity. *See, e.g., Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 184 (N.D. Ill. 1992) (certifying class of 129-300 persons geographically dispersed throughout the United States); *Scott v. Universal Fidelity Corp.*, No. 98 C 3659, 1999 WL 138868, at *3 (N.D. Ill. Mar. 5, 1999) ("[c]ourts have certified classes in which there were forty or fewer members") (citing *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986) (certifying class of 29 persons) and *Swanson v. American Consumer Industries, Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969) (40 class members sufficient)).

**b. Commonality**

Rule 23(a)(2) requires a showing that the class has common questions of law or fact. "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of

5

Rule 23(a)(2)." *Rosario*, 963 F.2d at 1018. A common nucleus of operative fact is typically found where "defendants have engaged in standardized conduct towards members of the proposed class." *Keele*, 149 F.3d at 594. Some variation among the claims of the individual class members does not defeat commonality. *Rosario*, 963 F.2d at 1017. "There need only be a single issue [of law or fact] common to all members of the class." *Gomez v. Illinois State Board of Education*, 117 F.R.D. 394, 399 (N.D. Ill. 1987) (quoting *Edmondson v. Simon*, 86 F.R.D. 375, 380 (N.D. Ill. 1980)).

There are several common legal and factual questions present in this case, including (1) whether defendants disseminated false and misleading proxy solicitations to the limited partners which misrepresented the true value of the Onteric Center; (2) whether defendants breached fiduciary duties owed to the limited partners in connection with the proxy solicitations, the allegedly self-dealing LMA transaction and the AIMCO offer; and (3) whether defendants breached their contractual obligations to the limited partners in connection with the proxy solicitations, the allegedly self-dealing LMA transaction and the AIMCO offer. The claims of plaintiffs and the proposed class members arise from the same practices of defendants and, thus, the commonality requirement of Rule 23(a)(2) has been met. *See McKenzie v. City of Chicago*, 175 F.R.D. 280, 286 (N.D. Ill. 1997) (quoting *In re VMS Securities Litigation*, 136 F.R.D. 466, 473 (N.D. Ill. 1991)) ("[p]laintiffs need only show that there is 'at least one question of law or fact common to the class' to satisfy the commonality requirement").

### c.  Typicality

Rule 23(a)(3) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class. The question of typicality is "closely related" to the

question of commonality. *Rosario*, 963 F.2d at 1018. "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele*, 149 F.3d at 595 (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). Typicality may be found even where "there are factual distinctions between the claims of the named plaintiffs and those of other class members." *Retired Chicago Police Association*, 7 F.3d at 597. "Instead, we look to the defendant's conduct and the plaintiff's legal theory to satisfy Rule 23(a)(3)." *Rosario*, 963 F.2d at 1018; *Wagner v. Nutrasweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996) (indicating typicality "should be determined with reference to the [defendants'] actions, not with respect to particularized defenses it might have against certain class members").

Defendants claim that plaintiffs' claims are not typical of the other potential class members because they did not all suffer the same alleged tax consequences as a result of the LMA transaction. Defs. Mem., pp. 11-12. However, "the [typicality] requirement may be satisfied even though . . . there is disparity in the damages claimed by the representative parties and the other members of the class." *Hinton v. First American Mortgage*, No. 96 C 5668, 1998 WL 111668, at *4 (N.D. Ill. Mar. 4, 1998). Nor is the Court persuaded that Birnberg's claims are atypical because his prior lawsuit against Milk Street estops him from asserting claims arising before 1994, or because he allegedly failed to report the LMA transaction on his tax returns. Defs. Mem., pp. 12-13. Plaintiffs are not asserting any pre-1994 claims, Pls. Reply, p. 16, and defendants' speculation that most limited partners abided by federal income tax laws while Birnberg did not is not sufficient to defeat plaintiffs' showing of typicality. *See Danis v. USN*

7

*Communications, Inc.*, 189 F.R.D. 391, 398 (N.D. Ill. 1999) ("[p]ure speculation will not defeat a finding of typicality").

### d. Adequacy of Representation

More problematic for plaintiffs is the final requirement of Rule 23(a) that "the representative parties will fairly and adequately protect the interests of the class." The adequacy of representation requirement has three elements: (1) the chosen class representative cannot have antagonistic or conflicting claims with other members of the class, . . . (2) the named representative must have a sufficient interest in the outcome to ensure vigorous advocacy, . . . and, (3) counsel for the named plaintiff must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously. *Gammon v. GC Services Ltd. Partnership*, 162 F.R.D. 313, 317 (N.D. Ill. 1995) (citations and quotations omitted). *See also Rosario*, 963 F.2d at 1018 ("[a] class is not fairly and adequately represented if class members have antagonistic or conflicting claims").

Defendants do not seriously dispute that plaintiffs intend to vigorously pursue this case or that they have retained qualified and experienced counsel to represent them. Instead, defendants focus on the fact that more than two-thirds of the limited partners approved the LMA transaction and may not want to undo the deal. Defs. Mem., pp. 11-12. In addition to monetary damages, plaintiffs are seeking injunctive relief to restrain defendants from substituting LMA as general partner of the Franklin Partnership and from completing LMA's acquisition of the limited partners' interests. They also seek a declaration that the LMA transaction is "null and void" and they want LMA to return the limited partner interests purchased to date. Cmplt., Request for

Relief. Defendants argue that plaintiffs cannot adequately represent any limited partner that wants to keep the LMA transaction intact. The Court agrees.

As noted, more than two-thirds of the limited partners approved the LMA transaction. Plaintiffs point out that this consent may have been obtained under false pretenses, but many of the limited partners may nonetheless prefer the LMA transaction over the AIMCO or any other deal, much less no deal at all.[2] Yet those limited partners are by necessity included in the putative class because the injunctive relief sought is an all-or-nothing proposition – plaintiffs want the LMA transaction declared "null and void." *See Buycks-Roberson v. Citibank Federal Sav. Bank*, 162 F.R.D. 322, 335 (N.D. Ill. 1995) ("[e]quitable relief, unlike actual damages, is not subject to individualized interests"). Thus, plaintiffs have not demonstrated that they would adequately represent the proposed class. *See, e.g., In re Hartmarx Securities Litigation*, No. 01 C 7832, 2002 WL 33103491, at *6 (N.D. Ill. Sept. 19, 2002) (to be adequate representative, plaintiffs must protect the "different, separate and distinct interest of the class members"); *Retired Chicago Police Association*, 7 F.3d at 598 (class representative not adequate where actual or potential conflict existed between members who benefitted from a settlement agreement and the representative seeking to undo it).

### 2. Requirements of Rule 23(b)(3)

Even if plaintiffs could show that they would adequately represent the proposed class of limited partners, their motion for class certification would still fail because they cannot satisfy the requirements of Rule 23(b)(3). Rule 23(b)(3) requires that common questions of fact or law

---

[2] Indeed, at the time of the LMA transaction, HUD was about to foreclose on the property. Cmplt. ¶¶27, 28.

predominate over issues affecting individual members. The predominance question requires the court to determine whether plaintiffs seek to remedy a common legal grievance. *Doe v. Guardian Life Ins. Co. of America*, 145 F.R.D. 466, 475 (N.D. Ill. 1992). Common questions of law or fact will predominate when there is a common course of conduct that leads to injury of all the class members. *Fietsam v. Connecticut General Life Ins. Co.*, No. 93 C 916, 1994 WL 323313, at *5 (N.D. Ill. June 27, 1994). The common issues need not, however, be dispositive of the entire litigation. *Doe*, 145 F.R.D. at 475; *Riordan*, 113 F.R.D. at 65. Rule 23(b)(3) also requires the Court to consider whether a class action is superior to other methods of adjudication. The underlying purpose of the predominance and superiority requirements is to evaluate whether class certification will have practical utility in the suit. *Doe*, 145 F.R.D. at 474.

### a. Predominance

Plaintiffs insist that common issues predominate here because their primary allegation is that defendants submitted false and misleading proxy solicitations that understated the value of the Onteric Center. According to plaintiffs, "the core question of Defendants' liability predominates over any individual issues" such as reliance and damages. Pls. Mem., p. 10. Defendants argue that this case turns on individual questions, including: (1) whether each limited partner actually suffered tax liabilities as a result of defendants' alleged misconduct; (2) whether each limited partner relied on the proxy solicitations in deciding whether to consent to the LMA transaction; and (3) whether each limited partner would actually prefer the LMA transaction over the AIMCO proposal as advocated by plaintiffs. Defendants also claim that their statute of limitations and estoppel defenses raise additional questions that must be addressed on an individualized basis. Defs. Mem., pp. 6-7, 10.

Plaintiffs are correct that a determination of whether defendants breached their fiduciary and contractual duties and made misrepresentations or omissions of fact by understating the value of the Onterie Center in the proxy solicitations, by engaging in a self-dealing transaction with LMA and by failing to present the AIMCO deal to the limited partners are common questions for all potential class members. And contrary to defendants' suggestion, their affirmative defenses do not raise individual issues sufficient to preclude class certification. The statute of limitations defense is based on the theory that plaintiffs seek to recover for "alleged wrongs dating back to 1984" – which they do not – and would not consume the merits of the case. Defs. Mem., p. 10; Pls. Reply, p. 16. *See Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 58 (N.D. Ill. 1996) ("it is only when a unique defense will consume the merits of a case that a class should not be certified"). In addition, defendants have not cited any cases where class certification was denied because the defendant, as opposed to the plaintiff, asserted an estoppel defense.

Nevertheless, this case does involve significant individual questions of causation, damages, and for the common law fraud and negligent misrepresentation claims, reliance.[3] *See*

---

[3] *See Hanover Ins. Co. v. Sutton*, 46 Mass. App. Ct. 153, 164, 705 N.E.2d 279 (1999) (plaintiff must show causal connection between breach of fiduciary duty and damages); *Sentinel Products Corp. v. Platt*, No. , 2002 WL 1613713, at *3 (D. Mass. July 22, 2002) ("plaintiff must be able to show that the defendant breached a material provision of the contract and that the plaintiff sustained damages as a result of that breach"); *Medical Air Technology Corp. v. Marwan Inv., Inc.*, 303 F.3d 11, 22 (1st Cir. 2002) ("[w]ithout causation, there can be no claim for . . . a breach of the implied covenant of good faith and fair dealing"); *Williams v. B&K Medical Systems, Inc.*, 49 Mass. App. Ct. 563, 732 N.E.2d 300, 307 (2000) (for tortious interference with contract claim, plaintiffs must show they were "harmed by the defendant's actions"); *Ibrahim v. Old Kent Bank*, No. 99 C 999, 2000 WL 263987, at *6 (N.D. Ill. Feb. 25, 2000) ("as a prerequisite to recovering under the ICFA each class member will have to make an individual showing that [defendant] proximately caused his or her damages"); *Hefferman v. Board of Trustees of Illinois Community College Dist. 508*, 310 F.3d 522, 525 (7th Cir. 2002)

11

*infra*, p. 13 regarding choice of law. For example, a determination whether each limited partner suffered "huge tax liabilities" or other damages as a result of defendants' alleged misconduct will require an individual assessment of such issues as each limited partners' particular tax circumstances, the relative benefits to them of the LMA transaction versus the AIMCO deal, and the reasons why they did or did not consent to the LMA transaction. Thus, plaintiffs have not demonstrated that common issues predominate their claims.

Plaintiffs argue, however, that these individual issues can be addressed separately after the liability phase is complete. *See Arenson v. Whitehall Convalescent and Nursing Home, Inc.*, 164 F.R.D. 659, 666 (N.D. Ill. 1996) ("[i]n the event that it becomes necessary to adjudicate the individual issues of either damages or reliance, the Court has several options available to it"); *Riordan*, 113 F.R.D. at 65 ("[i]t is well established that individual issues of reliance do not thwart class actions"); *Ibrahim*, 2000 WL 263987, at *6 (liability aspects of ICFA claim could proceed as class action while the causation and damages portions were adjudicated as individual actions). Common issues would in fact predominate with respect to the basic liability questions alone, but the Court must still consider whether class certification is a superior method of adjudicating this case. *See Fisher v. Bristol-Myers Squibb Co.*, 181 F.R.D. 365, 372 (N.D. Ill. 1998) ("[t]he Federal Rules give us the power to certify a class for the limited purpose of resolving basic liability issues alone . . . but it remains to be considered whether doing so would be a superior method of resolving the parties' controversy").

---

(fraud claim requires a showing that plaintiffs justifiably relied on a material misrepresentation and suffered resulting damage); *Orix Credit Alliance, Inc. v. Taylor Machine Works, Inc.*, 125 F.3d 468, 475, n.2 (7th Cir. 1997) (citing *Board of Education of City of Chicago v. A, C & S, Inc.*, 131 Ill.2d 428, 546 N.E.2d 580, 591 (1989)) (same showing of reliance required for negligent misrepresentation claim).

12

### b. Superiority

Rule 23(b)(3) provides the following factors to consider in determining whether a class action is superior to other available methods of adjudication: (a) the interest of the class members in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against the members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; and (d) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3); *Rahim v. Sheahan*, No. 99 C 395, 2001 WL 1263493, at *16 (N.D. Ill. Oct. 19, 2001).

Defendants argue that this case will be unmanageable as a class action because it will require consideration of the laws of some 35 different states. Defs. Mem., pp. 15-16. In fact, only two state laws govern this case – Massachusetts and Illinois. The parties do not dispute that Massachusetts law governs Counts 1, 3, 4 and 5. Defs. Mem., p. 16; Pls. Reply, pp. 17-18. *See Birnberg v. Milk Street Residential Associates Ltd. Partnership*, Nos. 02 C 978, 02 C 3436, 2003 WL 151929, at *15 (N.D. Ill. Jan. 21, 2003) (Manning, J.) And Judge Manning has decided that Illinois law governs Counts 2, 6 and 7 because Illinois has the most significant relationship to those counts. *Birnberg*, 2003 WL 151929, at *15.

Nevertheless, plaintiffs have not demonstrated that a class action is the superior method of adjudicating this case. According to the complaint, most of the limited partners have over $170,000 at stake. Cmplt. ¶68. They paid $141,000 per unit for their interests in the partnership, and the more than two-thirds of the limited partners who consented to the LMA transaction certified that they had consulted with an attorney or advisor prior to signing the proxy forms. *Id.*

13

¶19; Defs. Mem., p. 14. The existence of such large individual claims by sophisticated investors undercuts the alleged superiority of the class action. *See Liberty Mutual Ins. Co. v. Tribco Construction Co.*, 185 F.R.D. 533, 541 (N.D. Ill. 1999) ("courts often find that class actions are not appropriate when the individual members are sophisticated and have large claims"); *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) (the "policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action"); *Fisher*, 181 F.R.D. at 373 (class action not superior method of adjudication where it was unlikely that many class members would have *de minimis* claims). *Compare Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (class action superior where "lawsuit involve[d] claims averaging about $100 per plaintiff").

In addition, plaintiffs have not addressed the fact that they seek injunctive relief that may not be acceptable to all class members – more than two-thirds of whom voted to approve the LMA transaction. Limited partners who either do or do not want to undo the LMA transaction do not share similar interests in the litigation, which could affect the different tactical decisions made with regard to the case. *See Guillory v. American Tobacco Co.*, No. 97 C 8641, 2001 WL 290603, at *9 (N.D. Ill. Mar. 20, 2001). And each limited partner will be involved in extensive individualized proceedings to determine causation, damages and reliance whether a class is certified or not. *See Fisher*, 181 F.R.D. at 373 (little efficiency gained by certifying class on liability only where prospective class members would still need to participate in "extensive individualized proceedings regardless of whether we certify a class").

On balance, plaintiffs have not shown that a class action is a superior method of resolving their claims.

14

## CONCLUSION

For the reasons stated above, class certification is not appropriate in this case. There are significant individual questions involved, and plaintiffs have not shown that they would be adequate representatives or that class action is a superior method of adjudicating their claims. Thus, the Court recommends that plaintiffs' motion for class certification be denied.

                                        NAN R. NOLAN
                                        United States Magistrate Judge

Dated: May 28, 2003